(December 10, 1907.)

STATE, Respondent, v. W. F. DOLAN, Appellant.

[92 Pac. 995.]

SUNDAY REST LAW—PROHIBITION OF BUSINESS—POLICE POWER—CONSTITUTIONAL LAW.

1. In the exercise of its police power, a state may prohibit the conduct of business on Sunday.

2. The title of the act of March 12, 1907, "'An act to set apart Sunday as a day of public rest; to provide for the closing of saloons and other places of business on Sunday; to prohibit the selling, giving away or disposing of any spirituous, vinous, malt or intoxicating liquors on Sunday; to provide for the closing of places of public amusement and prohibiting horse-racing on Sunday; and to provide for the punishment of those guilty of violating the provisions of this act, and providing for the disposal of all fines collected under the terms of this act,'' does not violate article 3, section 16, of the constitution of this state, which provides, "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title,'' etc.

3. The act of March 12, 1907, prohibiting keeping open on Sunday for the purpose of trade, etc., any shop, store, building, or place of business whatever, and exempting hotels, restaurants, livery-stables, stores in selling medicine and supplies for the sick, undertakers, news-stands in the quiet sale and delivery of papers and magazines, nonintoxicating refreshments, candies and cigars, and prohibiting saloons from opening or the sale of intoxicating liquor on Sunday, and prohibiting the opening of a theater, playhouse, dance-house, racetrack, merry-go-round, circus, or show, concert saloon, billiard or pool-room, bowling-alley, variety-hall, or any such place of public amusement, prohibiting horse-racing on Sunday, and providing penalties for violations of the act and prescribing the duties of the prosecuting attorney as to such prosecutions, does not take property without due process of law, does not violate the bill of rights, is not special or local legislation, does not discriminate between different persons, and is not unfair or unreasonable under the constitution.

4. The legislature is the judge of a proper classification under a Sunday rest law, and its discretion will not be interfered with, unless such law violates some provision of the constitution.

5. A law declaring Sunday a day of rest is not unconstitutional, because it does not prohibit all kinds of labor on Sunday.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County.    Hon. Fremont Wood, Judge.

The defendant was convicted of keeping his place of business open on Sunday in violation of section 2 of an act approved March 12, 1907.    *Affirmed.*

C. C. Cavanah, J. J. Blake, J. P. Gray, and H. P. Knight, for Appellant.

Section 16 of article 3 of our constitution was not complied with by the legislature, in attempting to adopt either a Sunday rest law or to provide for religious observance, as more than one subject and matter are embraced therein, and the title does not fairly express the object of the enactment. (Cooley's Const. Lim., 7th ed., 119; *Turner v. Coffin,* 9 Idaho, 338, 74 Pac. 962; *Katz v. Herrick,* 12 Idaho, 1, 86 Pac. 873; *Pioneer Irr. Dist. v. Bradbury,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295; *Clark v. Board Co. Commrs.,* 54 Kan. 634, 39 Pac. 225; *Ryno v. State,* 58 N. J. L. 238, 33 Atl. 219; *State v. McCann* (Tenn.), 4 Lea, 1; *Spaulding L. Co. v. Independence Imp. Co.,* 42 Or. 394, 71 Pac. 132; *State v. Stone,* 24 Nev. 308, 53 Pac. 497.)

The title to the act is deceptive and misleading, as it does not clearly express the subject of the legislation and does not fit the body of the bill.    (*Katz v. Herrick, supra; State v. Coffin, supra; People v. Allen,* 42 N. Y. 404-420.)

The title to this act is too general, and therefore deceptive. (*Sneath v. Mager,* 64 N. J. L. 94, 44 Atl. 983; *Burnett v. Dean,* 63 N. J. Eq. 253, 49 Atl. 503, 51 Atl. 1023; *Coutieri v. City New Brunswick,* 44 N. J. L. 58.)

Section 2 of said act is invalid and unconstitutional, in that it is in violation of the fourteenth amendment of the federal constitution, as it deprives the defendant of his property without due process of law, denies him the equal protection of the law, and abridges the privileges and immunities of the citizens and the defendant as guaranteed by said fourteenth amendment; also is in violation of section 1 of article 1 and section 19 of article 3 of the constitution of Idaho, as it deprives the defendant of the right of acquiring, possessing

and protecting his property, and is local, special and class legislation, and unlawfully discriminates between citizens' engaged in selling goods, wares and merchandise and those engaged in any other lawful business   (*Ex parte Newman*, 9 Cal. 502; *French v. Teschemaker,* 24 Cal. 518; *Ex parte Westerfield*, 55 Cal. 550, 36 Am. Rep. 47; *Ex parte Jentzsch*, 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; 1 Tiedeman on Police and Federal Control, 209-215; *City of Pasadena v. Stimson,* 91 Cal. 238, 27 Pac. 604; *Rauer v. Williams*, 118 Cal. 401, 50 Pac. 691, 693; *Eden v. People,* 161 Ill. 296, 52 Am. St. Rep. 365, 43 N. E. 1108, 32 L. R. A. 659, 664; *Millett v. People,* 117 Ill. 294, 57 Am. Rep. 869, 7 N. E. 631; *Keim v. Chicago,* 46 Ill. App. 445; Cooley's Const. Lim., 5th ed., 484-487; *City of Denver v. Bach,* 26 Colo. 530, 58 Pac. 1089, 46 L. R. A. 848; *State v. Granneman,* 132 Mo. 326, 33 S. W. 784; *Ragio v. State,* 86 Tenn. 272, 6 S. W. 401; Story on the Constitution, 5th ed., 1590; *Garrabad v. Dering* (1893), 84 Wis. 585, 36 Am. St. Rep. 948, 54 N. W. 1104, 19 L. R. A. 858; *May v. People,* 1 Colo. App. 157, 27 Pac. 1010, 1112; *State v. Goodwill,* 33 W. Va. 179, 25 Am. St. Rep. 863, 10 S. E. 285, 6 L. R. A. 623; *Wynehamer v. People,* 13 N. Y. 378; *Frorer v. People,* 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492.)

The legislature may not, under the guise of protecting public interest, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.  In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts.  (*Lawton v. Steele,* 152 U. S. 133, 38 L. ed. 385, 14 Sup. Ct. Rep. 499; *Gulf, Col. & S. F. Ry. Co. v. Ellis,* 165 U. S. 150, 41 L. ed. 666, 17 Sup. Ct. Rep. 255; *Yick Wo v. Hopkins,* 118 U. S. 220, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064; Cooley's Const. Lim., 1st ed., p. 391; *People v. Gilson,* 109 N. Y. 389, 4 Am. St. Rep. 465, 17 N. E. 343; *Barbier v. Connelly,* 133 U. S. 27, 28 L. ed. 923, 5 Sup. Ct. Rep. 357.)

Section 2 of said act is unreasonable, harsh and oppressive, in that it does not exempt from being performed on Sunday works or acts of necessity and charity.

Section 1 of this act does not contain nor does the act contain any penalty by way of enforcement. Section 1 is not in any sense a law unless some penalty can be inflicted or punishment imposed for a violation thereof. A penalty must be especially created and imposed by statute and can never be raised by implication. (Am. & Eng. Ency. of Law, 2d ed., 55; *In re McDonough,* 49 Fed. 360; *Franch v. Foley,* 11 Fed. 801.)

J. J. Guheen, Edwin Snow, J. H. Peterson, and B. S. Crow, for Respondent.

In the case of *State v. Doherty,* 3 Idaho, 384, 29 Pac. 855, this court laid down the correct rule of construction, a rule to which it has ever since closely adhered and a rule upon which we can find no conflict in any of the courts. The court said: "It is sufficient if the act treats of but one general subject and the subject expressed in the title." (*Pioneer Irr. Dist. v. Bradley,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295; *State v. Board of Commrs.,* 21 Nev. 235, 29 Pac. 974; *Northern Counties Investment Trust v. Sears,* 30 Or. 388, 41 Pac. 931, 35 L. R. A. 188; *State v. Jones,* 9 Idaho, 693, 75 Pac. 819; *Gerding v. Commrs.,* 13 Idaho, 444, 90 Pac. 357.)

"The generality of the title is, therefore, no objection to it so long as it is not made a cover to legislation incongruous in itself and which by no fair intendment can be considered as having a necessary and proper connection." (Cooley's Const. Lim., 6th ed., 172; *State v. Shaw,* 22 Or. 287, 29 Pac. 1028; *O'Keefe v. Webber,* 14 Or. 55, 12 Pac. 74; *Bowman v. Cockerill,* 6 Kan. 311; *Howland Coal Co. v. Brown,* 13 Bush (Ky.), 681; *Montgomery etc. Assn. v. Robinson,* 69 Ala. 413; *State v. County Judge,* 2 Iowa, 280; *State v. Courtney,* 27 Mont. 378, 71 Pac. 308.)

There can no longer be any doubt but that Sunday closing laws are constitutional and valid as a legitimate and proper exercise of the police power of the state. Nearly all the states in the Union have passed such laws, and they have been uni-

formly held to be constitutional, except in the single case of *Ex parte Newman,* 9 Cal. 502. A few years subsequently the case of *Ex parte Newman* was expressly overruled. (See *Ex parte Andrews,* 18 Cal. 678; Cooley's Const. Lim. 734.)

In the great discretion allowed the legislature in the exercise of its police power for the health, morals and general welfare of the public, the legislature thought it advisable to close shops and places of business on Sunday. The exercise of this discretion is a matter entirely with the legislature and the people they represent. The judicial department of the state has nothing to do with the manner in which this discretion shall be exercised. (*Ex parte Koser,* 60 Cal. 189; Cooley's Const. Lim., 6th ed., 153.)

A law affecting all alike who are in the same class is not class or special legislation. (*Boise Land & Irr. Co. v. Stewart,* 10 Idaho, 38, 77 Pac. 25, 321; *Brooks v. Hyde,* 37 Cal. 366; *Barbier v. Connolly,* 113 U. S. 27, 28 L. ed. 923, 5 Sup. Ct. Rep. 357.)

"The fourteenth amendment does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such regulation shall be treated alike under like circumstances and conditions both in the privileges conferred and in the liabilities imposed." (*Hayes v. Missouri,* 120 U. S. 68, 30 L. ed. 578, 7 Sup. Ct. Rep. 350; *People v. Butting,* 35 N. Y. Supp. 19, 13 Misc. Rep. 587; *Liberman v. State,* 26 Neb. 464, 18 Am. St. Rep. 791, 42 N. W. 419; *Bohl v. State,* 3 Tex. 683; *Ex parte Northup,* 41 Or. 489, 69 Pac. 445.)

In the following cases Sunday rest laws were passed upon and held to be constitutional under the same objections urged by appellant against this statute: *State v. Nicholas,* 28 Wash. 628, 69 Pac. 372; *State v. Petit,* 74 Minn. 376, 77 N. W. 225, and cases cited; *Frolickstein v. Mayor of Mobile,* 40 Ala. 725; *Scales v. State,* 47 Ark. 476, 58 Am. Rep. 768, 1 S. W. 769; *Ex parte Burke,* 59 Cal. 6, 43 Am. Rep. 231; *Gunn v. State,* 89 Ga. 341, 58 Am. Rep. 768, 15 S. E. 458; *Megowan v. Commissioners,* 2 Met. (Ky.) 3; *State v. Judge,* 39 La. 132, 1 South. 437;

*State v. Ambs,* 20 Mo. 214; *Lindenmiller v. People,* 33 Barb.
548; *Bryer v. State,* 102 Tenn. 103, 50 S. W. 769; *Gable v. City
of Houston,* 29 Tex. 335; *In re King,* 46 Fed. 905; Cooley's
Const. Lim., 5th ed., 746; Tiedeman on Limitations, 175-188;
*State v. Bergfeldt,* 41 Wash. 234, 83 Pac. 177; *People v. Bel-
let,* 99 Mich. 151, 41 Am. St. Rep. 589, 57 N. W. 1094, 22 L.
R. A. 696; *People v. Havnor,* 149 N. Y. 195, 52 Am. St.
Rep. 707, 43 N. E. 541; *Johns v. State,* 78 Ind. 332, 41 Am.
Rep. 577; *State v. Sopher,* 25 Utah, 318, 95 Am. St. Rep.
845, 71 Pac. 482, 60 L. R. A. 468; *State v. Justus,* 91 Minn.
447, 103 Am. St. Rep. 521, 98 N. W. 325, 64 L. R. A. 510.

STEWART, J.—The defendant was convicted in the dis-
trict court of Ada county for violating the provisions of sec-
tion 2 of an act approved March 12, 1907 (Laws 1907, p.
223). The facts before the district court were stipulated by
the parties to the effect, first, that on the twelfth day of
May, 1907 (being Sunday, the first day of the week), at
Boise City, Ada county, state of Idaho, the defendant was
engaged in the business of selling in a store building, rented
by said defendant, goods, wares and merchandise, to wit: ice,
bread, butter, cheese, crackers, candies, oysters, fish, oranges,
lemons, pickles, berries, cherries, apples, cider, lunch goods,
eggs, spices, condiments, canned meats, jams, jellies, coffee
in packages, tea in packages, and vegetables; that he kept
his store open on said twelfth day of May, 1907, for the pur-
pose of conducting and carrying on said business and selling
any and all of the aforesaid goods and articles, and on said
day did sell to certain citizens of Boise, bread, ice, fruit, can-
dies, butter, fish and oysters; second, that the defendant on
each and every day of the week sells and delivers from said
store, ice to a large number of customers, and receives by ex-
press oysters and fish of different kinds from points on the
Pacific Coast, every evening of the week, which, like fruits,
berries and butter, are of a perishable nature and go to waste
during the summer months if kept in stock longer than twenty
hours; third, that all of such goods, except candies, are used
as necessaries of life by mankind; fourth, that part of the
defendant's business is to sell and supply on Sunday to hotels

and places where food and meals are furnished and sold, all of the aforementioned articles except candy, and that a number of customers of said defendant furnish meals to the general public and necessarily use the aforesaid mentioned goods, and that it is impossible for them with safety and profit to determine the amount of such goods which they may need on Sunday.

The defendant appeals to this court from the judgment of conviction.

The defendant assigns as error the decision of the trial court, holding the complaint stated facts sufficient to constitute a public offense, for the reason that the act approved March 12, 1907 (Laws 1907, p. 223), is unconstitutional. · The contention of defendant is, that said act does not comply with the provisions of section 16 of article 3 of the constitution of Idaho, in that the same and the title thereto embrace more than one subject and matters properly connected therewith; that the title is deceptive and misleading; that section 2 violates article 14 of the amendment to the constitution of the United States, in that it deprives the defendant of property without due process of law; in that it denies the defendant the equal protection of the law, and abridges the privileges and immunities of citizens and of the defendant; and violates section 1 of article 1 of the constitution of the state of Idaho, in that it deprives the defendant of the right of acquiring, possessing and protecting his property, and the equal protection of the law; and violates article 3, section 19, in that the legislature shall not pass local or special laws in any of the following enumerated cases; that is to say, for the punishment of crimes and misdemeanors, and is in contravention of the constitution of the United States and the constitution of the state of Idaho, in that the same is class legislation; that said section discriminates between citizens engaged in the sale of goods, wares and merchandise and in lawful business, and those engaged in other classes of lawful business, sale of goods, wares and merchandise, which are not of necessity or charity; that said section is void and unreasonable, in that it permits citizens to keep open any store, shop or place of

business for the purpose of sale and delivery of daily newspapers, magazines, nonintoxicating refreshments, candies and cigars, and the performance of certain kinds of labor and the conduct of certain kinds of business which are not of necessity or charity, and denies the right to sell the necessaries of life; that said section is invalid, void and unreasonable, in that it does not apply to nor operate alike upon every person or persons of the same class engaged in lawful business, under like circumstances and conditions.

As to the title of the act: This act may be found on page 223 of the Laws of 1907. The title reads as follows: "An act to set apart Sunday as a day of public rest; to provide for the closing of saloons and other places of business on Sunday; to prohibit the selling, giving away or disposing of any spirituous, vinous, malt or intoxicating liquors on Sunday; to provide for the closing of places of public amusement and prohibiting horseracing on Sunday; and to provide for the punishment of those guilty of violating the provisions of this act, and providing for the disposal of all fines collected under the terms of this act."

This court has had occasion to construe this provision of the constitution, and has determined its demands. In the case of *State v. Doherty,* 3 Idaho, 384, 29 Pac. 855, this court quotes with approval from Judge Cooley's work on Constitutional Limitations (6th ed., pp. 171, 172) as to the requirements of this constitutional provision, as follows: "It may therefore be assumed as settled that the purpose of these provisions was, first, to prevent hodgepodge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the title gave no intimation and which might therefore be overlooked and carelessly and unintentionally adopted; and third, to fairly apprise the people through such publications of legislative proceedings as is usually made of the subjects of legislation that are being considered in order that they may have the opportunity of being heard thereon by a petition or otherwise, if they shall so desire." And further, that "The purpose of these provisions is accomplished when a law has but one general object

which is fairly indicated by the title. To require every end and means necessary and convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible.''

This text from Judge Cooley is recognized by all the leading cases as a correct statement of the purpose and object of this provision of the constitution. ''If all parts of the act have a natural connection and reasonably relate, directly or indirectly, to one general, legitimate subject of legislation, the act is not open to the objection of plurality of subjects.'' (26 Ency. of Law, 2d ed., 575.) This court in *State v. Doherty, supra,* said: ''It is sufficient if the act treats of but one general subject and that subject expressed in the title. To hold that each subdivision of the subject and each and every of the ends and means necessary for the accomplishment of the object of the act must be specifically mentioned in the title, would greatly embarrass legislation and accomplish no legitimate purpose.''

In the case of *Pioneer Irr. Dist. v. Bradley,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295, this court treated this question very exhaustively, and the authorities dealing with this specific question were reviewed *in extenso,* and this court quoted with approval from Judge Cooley's Constitutional Limitations as follows: ''The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection.''

This court also quotes with approval from the case of *State v. Board of Commrs. of Humboldt Co.,* 21 Nev. 235, 29 Pac. 974, as follows: ''If the provisions of a statute all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title, it is permissible to unite them in the same act.''

In the case of *State v. Jones,* 9 Idaho, 693, 75 Pac. 819, this court quotes with approval from the case of *Steele Co. v. Erskine,* 98 Fed. 215, 39 C. C. A. 173, as follows: ''It (the title) plainly indicated the object and purpose of the

act, which is all the constitution requires. The subject of a statute is one thing and its detailed provisions quite another; one is the topic, the other its treatment; one is required to be stated in the title, the other is not.''

In the case of *Turner v. Coffin*, 9 Idaho, 338, 74 Pac. 962, this court said: ''It seems to have been generally recognized by the authorities as the intention of the framers of such a constitutional provision to require a title sufficiently definite and comprehensive as to indicate to one reading it the general scope and purpose of the legislation intended by the act, and that if the title be sufficient for that purpose, it will be held as including all necessary and incidental legislation necessary to make the general purpose of the act operative.''

So far as this court is concerned, it has been determined that the title should indicate the general scope and purpose of the legislative enactment, and be so comprehensive as to give notice of such proposed legislation. The title should not be of such a character as to mislead or deceive, either the law-making body, or the public, as to the legislative intent. It should not cover legislation which is contradictory or not connected with or related to the general subject stated in the act. It should be broad enough to cover the subjects dealt with in the act, but not too broad, so as to indicate an intention to legislate upon a subject which the body of the act falls short of accomplishing, or departs therefrom. With the law thus in this state, we will examine the title to the act involved.

''To set apart Sunday as a day of public rest,'' covers the provisions of section 1 of said act. ''To provide for the closing of saloons and other places of business on Sunday,'' covers the provisions of section 2 and a part of 3 of said act. ''To prohibit the selling, giving away or disposing of any spirituous, vinous, malt or intoxicating liquors on Sunday,'' covers the provisions of section 3 of said act. ''To provide for the closing of places of public amusement and prohibiting horseracing on Sunday,'' covers part of the provisions of section 3 and all of section 4 of said act. ''To provide for the punishment of those guilty of violating the

provisions of this act and providing for the disposal of all fines collected under the terms of this act,'' covers the penalties under each section of said act.

Thus we see that the title is a complete and clear index to the provisions of the act. The title sets apart Sunday as a day of public rest; it prohibits the doing of certain business upon Sunday; prohibits certain amusements upon that day; prohibits the sale of intoxicating liquors; and provides generally for the punishment of violations of said act. The title is broad and clearly indicates the intention of the legislature as to what shall be embraced in said act. It indicates to everyone and publishes to the world that the first day of the week, commonly called Sunday, is set apart as a day of public rest. It gives notice that to carry out that object and purpose certain business houses shall be closed for trade, and certain business shall be prohibited on that day, and provides for punishing violations of said act. Anyone reading this title would at once be informed that the legislature intended to deal with the subject of Sunday as a day of public rest, and to deal with certain classes of business and certain amusements, in so far as their cessation upon said day might have to do with making Sunday a day of public rest. The title clearly indicates all that the act embraces.

Is the title too broad for the subject matter? The title indicates that Sunday is set apart as a day of public rest. Section 1 so declares. But the title of the act in so setting apart this day as a day of public rest does not indicate the intent of the legislature to prohibit all labor upon said day. In fact, after the first declaration in the title, the specific subjects which the legislature intends to deal with are stated in the title, and each one of these subjects is dealt with in the body of the act. The title of the act does not pretend to do more than the body of the act actually does. To set apart Sunday as a day of public rest does not necessarily mean that no secular labor shall be performed upon said day. Section 1 does nothing more than follow the language of the title in declaring the legislative intent upon the general subject, and the sections thereafter deal specifically with the

means of carrying out the general subject, each of which provides a penalty for a violation thereof. No penalty was necessary under section 1, as the legislature did not intend to penalize all secular labor.

Are the provisions of said act incongruous or inharmonious? Sections 2, 3 and 4 prohibit the doing of certain things upon Sunday, and provide a penalty for the violation thereof. They are all incidents to the general subject; they are the means by which the legislature intended to carry out the declaration of section 1 that Sunday is set apart as a day of public rest. They all relate to the prohibition of certain acts upon said day. Each may exist independent of the other. No one of said sections contradicts the provisions of any other section. They are not inconsistent or unsuitable to each other. Section 5 prescribes the duty of certain officers in relation to the enforcement of said act. This is covered by the title and is the means for enforcing the penal portions of each section.

Is the title deceptive or misleading? It declares Sunday to be a day of rest; specifically states the intent of the legislature as to what may not be done on such day. Anyone reading the title would be advised of the proposed legislation; no one could be deceived or misled as to what the legislature intended to do in a general way. It does not conceal or cover up any secret intent of the legislature.

Are each of the subjects dealt with in the body of the act germane to and connected with the general subject of public rest? All relate to the general subject. Each is a means for carrying out the general object and purpose of the act. The declared object of the act is to make Sunday a day of public rest, and the remainder of the title specifies the means and instrumentalities by which that object is to be secured. While it is true the act does not prohibit all labor upon Sunday, and does not provide a penalty for those who do not rest upon this day, yet the title of the act does not indicate that there shall be no labor upon Sunday; it does not indicate that every person engaged in the business dealt with shall rest upon Sunday. A reasonable and common-sense construction must be given to this act, and when such construction is placed

upon it, we readily see what the legislature intended by the title and the provisions of the act. The legislature evidently viewed the subject from the standpoint that while by the provisions of the act, Sunday was declared a day of public rest, yet by the prohibition of certain trades and business upon said day, and the closing of saloons and the prohibition of the sale of intoxicating liquors, and the closing of certain places of amusement, horseracing, etc., that the owners and proprietors of such places of business would thereby cease their regular labors upon such day, and such day would thereby become a day of public rest to that extent. To accomplish this, it was not necessary under the title of the act that every kind of manual labor should be prohibited, or that a penalty should be provided as a punishment for those who did not rest upon said day. As a step in the direction of the observance of Sunday as a day of public rest, the legislature deemed it wise and politic to prohibit the doing of certain business upon Sunday. The entire subject was included and covered by the title. The title is clearly sufficient and not in violation of article 3, section 16 of the constitution.

Does this act conflict with the fourteenth amendment to the constitution of the United States? By this amendment "a state is forbidden to make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The privileges or immunities of citizens of the United States covered by this amendment are those which arise out of the nature of the general government, its constitution or the laws made in pursuance thereof, and these are placed by this amendment under the protection of Congress; but the privileges and immunities of the citizens of the states, with those exceptions, embrace generally those fundamental rights for the security and establishment of which society is instituted; and they remain under the care of the state governments. (*The Slaughter-House Cases,* 16 Wall. 36, 21 L. ed. 394.) The privileges and immunities involved under the act of March 12, 1907, belong to that class which the court

in the above case characterizes as those of citizens of the state, and are therefore not referred to by the fourteenth amendment. They do not arise out of the nature of the general government, its constitution or laws. They are police regulations, and purely matters for state regulation and control.

It is also contended on the part of defendant that this act violates the provisions of the fourteenth amendment to the constitution of the United States, which provides: "Nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Counsel also contend that this act violates the Bill of Rights, section 1, article 1 of the constitution of this state, which is: "All men are by nature free and equal and have certain inalienable rights, among which are life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety."

These last two objections may be considered together, and go to the power of the legislature to deal with this subject at all. It must be conceded that the very necessity of government itself concedes a power to impose certain restrictions upon individual rights of life, liberty and property, and the power to regulate the conduct of business as well as the conduct of the individual. Did not constitutional government possess such power, it could not serve any useful purpose, and without power to restrain individuals from transgressing the rights of others and to restrain them in their conduct, which is necessary to conserve and protect the rights of all, the government must fall. This power in government is what may be termed and denominated "police power."

It has been contended in many other courts, as it is here contended, that the legislature has no power to restrict an individual in the carrying on of his business; that to do so is taking property without due process of law; that to do so denies him an inalienable right. These objections, however, have not received very favorable consideration by any of the courts of the land. The power of the legislature to deal with

the question is no longer in doubt. It is conceded by all the courts that under the police power of the state the legislature may restrict individuals in their conduct, may restrict them in their business, and so long as such regulations are reasonable, they do not violate the provisions of the constitution of the United States or of this state.

We shall not stop here to cite the many cases dealing with this question. Many of them, however, are collected and commented upon by the supreme court of Maryland in the case of *Judefind v. State,* 78 Md. 510, 28 Atl. 405, 22 L. R. A. 721; also in the case of *State v. Petit,* 74 Minn. 376, 77 N. W. 225, and the same case in 177 U. S. 164, 44 L. ed. 716, 20 Sup. Ct. Rep. 666; *People v. Havnor,* 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689; *Breyer v. State,* 102 Tenn. 103, 50 S. W. 769; *State v. Nichols,* 28 Wash. 628, 69 Pac. 372; *State v. Judge of Section A,* 39 La. 132, 1 South. 437.

"The police of the state, in a comprehensive sense, embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with the like enjoyment of rights by others." (Cooley's Const. Lim., p. 829.)

Shaw, C. J., in *Commonwealth v. Alger,* 7 Cush. 53, says: "We think it is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth . . . . is held subject to those general regulations, which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable

limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."

Redfield, Judge, in the case of *Thorpe v. Rutland & Burlington R. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625, says: "This police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state."

This court in a recent case, *Mullen v. Moseley,* 13 Idaho, 457, 90 Pac. 986, uses this language: "Uniform holdings of this court have been along the lines of a liberal construction in favor of a new and ample exercise of the police power of the state looking to the protection of the public morals and the maintenance of peace and quiet, as well as the protection of life and property. The determination of the means necessary to attain those ends primarily rests with the legislative department of the state government, and is always subject to a supervision and consideration of the courts established for that purpose."

Mr. Cooley in his Constitutional Limitations, page 859, says: "There can no longer be any question, if any there ever was, that such (Sunday) laws may be supported as regulations of police."

Almost every state in the Union has upheld the principle that Sunday regulation is within the police power of the state. The courts recognize the power of the state to regulate both business and individual action upon Sunday, and to prohibit absolutely the carrying on of certain trades and business; some upon the ground that it is a religious regulation, but generally upon the ground that it is a police regulation.

The conclusion of this court in this case is based upon the power of the state, under its general police power, to enact Sunday laws for the purpose of prohibiting certain business and amusements upon said day, in the interest of good morals, health and happiness. It could serve no good purpose were

we to take up for discussion and cite the many cases wherein Sunday laws have been upheld, but we find that with the exception of a few, Sunday rest laws have been sustained, and in the states holding such laws to be unconstitutional, it is generally upon the ground that the classification of business was unjust and unreasonable, and was local and special legislation.

One of the earliest cases dealing with the question of Sunday law is that of *Ex parte Newman,* 9 Cal. 502. In that case, however, the title of the act was, "An act for the better observance of the Sabbath." The court held such law to be unconstitutional because it established a compulsory religious observance. Justice Field dissented, and his dissenting opinion was afterward approved by the same court in the case of *Ex parte Andrews,* 18 Cal. 678. Justice Field's dissenting opinion has stood as the leading judicial expression upon this question since 1858, and has been more extensively quoted and approved by the courts passing upon this question than any other expression, either by a court or a text-writer. In that opinion, he uses this language: "In fixing a day of rest, it establishes only a rule of civil conduct. In limiting its command to secular pursuits, it necessarily leaves religious profession and worship free. It is absurd to say that the sale of clothing, or other goods, on Sunday, is an act of religion or worship; and it follows that the inhibition of such sale does not interfere with either. . . . . The legislature possesses the undoubted right to pass laws for the preservation of health and the promotion of good morals; and if it is of opinion that periodical cessation from labor will tend to both, and thinks proper to carry its opinion into a statutory enactment on the subject, there is no power outside of its constituents, which can sit in judgment upon its action. It is not for the judiciary to assume a wisdom which it denies to the legislature, and exercise a supervision over the discretion of the latter. It is not the province of the judiciary to pass upon the wisdom and policy of legislation; and when it does so, it usurps a power never conferred by the constitution. It is no answer to the requirements of the statute to

say that mankind will seek cessation from labor by the natural influences of self-preservation. The position assumes that all men are independent, and at liberty to work whenever they choose. Whether this be true or not in theory, it is false in fact; it is contradicted by every day's experience.''

The same justice in further discussing the Sunday law, says: ''But it is urged that the intention of the law is to enforce the Sabbath as a religious institution. This position is assumed from the description of the day and the title of the act, but is not warranted by either. . . . . The power of selection being in the legislature, there is no valid reason why Sunday should not be designated as well as any other day. Probably no day in the week could be taken which would not be subject to some objection. That the law operates with inconvenience to some is no argument against its constitutionality. Such inconvenience is an incident to all general laws. A civil regulation cannot be converted into a religious institution because it is enforced on a day which a particular religious sect regards as sacred. The legislature has seen fit, in different enactments, to prohibit judicial and various kinds of official business on Sunday, and yet it has never been contended that these enactments establish any religious observances, or that the compulsory abstinence from judicial or official labor is a discrimination or preference in favor of any religious sect.''

In the case of *Ex parte Koser,* 60 Cal. 177, the supreme court had under consideration an act which made it a misdemeanor to keep open on Sunday any store, workshop, bar, saloon, banking-house, or other place of business, which excepted from the operation of the statute hotels, boarding-houses, barber-shops, baths, markets, restaurants, taverns, livery-stables, retail drug stores, manufacturing establishments, etc. In this case the court follows the doctrine of *Ex parte Andrews,* 18 Cal. 678, and sustained the constitutionality of the law under consideration. The court says: ''To hold such enactments unconstitutional and void would, in my judgment, impose an unwarrantable restriction on the

legislative power." *Ex parte Andrews* overruled *Ex parte Newman* and followed the dissenting opinion of Judge Field.

It will be observed that the provisions of the statute under consideration in the California case were very much like the statute approved by the legislature of this state on the twelfth day of March, 1907. The supreme court of Louisiana in the case of *State v. Judge of Section A,* 39 La. Ann. 132, 1 South. 437, had under consideration a Sunday law and approved the reasoning of the supreme court of California in the case of *Ex parte Andrews,* 18 Cal. 678, and said: "There exists a remarkable consensus of authority that the establishment of a compulsory day of rest in each week is the legitimate exercise of the police power. Such laws have been passed in nearly every state of the Union, and their constitutionality has never been successfully questioned in but a single case within our knowledge" (alluding to the case of *Ex parte Newman,* 9 Cal. 502, which was subsequently overruled by the same court in *Ex parte Andrews,* 18 Cal. 678). The Louisiana court then collates the various decisions upholding such Sunday law, and says: "The foregoing considerations are certainly rational and plausible, and they bring the legislation within the distinct purview of the principles underlying and sustaining the proper exercise of the police power."

The supreme court of Michigan in the case of *People v. Bellet,* 99 Mich. 151, 41 Am. St. Rep. 589, 57 N. W. 1094, 22 L. R. A. 696, says: "The better reason for maintaining the police power to prohibit citizens from engaging in secular pursuits on Sunday is the necessity of such regulation as a sanitary measure. As to those employments which are noiseless and harmless in themselves, and conducted in a manner not calculated to offend those who, from religious scruples, observe Sunday as the Lord's day, this necessity appears to be the only valid source of legislative power; and this is based upon the fact that experience has demonstrated that one day's rest is requisite for the health of most individuals, and not all individuals possess the power to observe a day of rest of their own volition."

The supreme court of Maryland in the case of *Judefind v. State*, 78 Md. 510, 28 Atl. 405, 22 L. R. A. 721, had under consideration a Sunday law, and says: "There have been numerous decisions in this country, as well as elsewhere, sustaining such law, and we have no desire to be the exception to the general rule. Nature, experience, and observation suggest the propriety and necessity of one day of rest, and the day generally adopted is Sunday. There are, and always will be, honest differences of opinion as to how Sunday shall be spent, but the advantages of having a weekly day of rest, 'from a mere physical and political standpoint,' are too apparent to permit us to doubt the propriety of having reasonable laws to regulate work on that day."

In the case of *People v. Havnor*, 149 N. Y. 195, 52 Am. St. Rep. 707, 43 N. E. 541, 31 L. R. A. 689, the court of appeals of New York considered this question, and says: "We think that this statute was intended and is adapted to promote the public health, and thereby serve a purpose of the utmost importance by promoting the observance of Sunday as a day of rest. It follows, therefore, that it does not go beyond the limits of legislative power by depriving anyone of liberty or property within the meaning of the constitution."

In the case of *State v. Petit*, 74 Minn. 376, 77 N. W. 225, the supreme court of Minnesota in discussing a Sunday law, says: "It has been decided in this state, in accordance with an almost unbroken line of authorities elsewhere, that the legislature may, in the exercise of the police power of the state, establish by law, as a civil and political institution, the first day of the week as a day of rest, and may prohibit upon it the performance of any manner of labor, business, or work, except only works of necessity or charity."

The same case reached the supreme court of the United States and the judgment of the supreme court of Minnesota was affirmed (177 U. S. 164, 44 L. ed. 716, 20 Sup. Ct. Rep. 666). Justice Fuller in this case quotes from *Ex parte Andrews, supra,* which in turn quoted from Justice Field's dissenting opinion in *Ex parte Newman, supra,* and says: "Well-

nigh innumerable decisions of the state courts have sustained
the validity of such laws."

In the case of *Breyer v. State,* 102 Tenn. 103, 50 S. W. 769,
the supreme court of Tennessee considered this question and
sustained such law, and held the same not to be class legisla-
tion, and said: "Every sovereign state possesses within itself
absolute and unlimited legislative power, except so far as it
is prohibited by the fundamental law." ·

In the case of *State v. Nichols,* 28 Wash. 628, 69 Pac. 372,
the supreme court of Washington had under consideration a
Sunday law, and the same was sustained.

There are many other cases dealing with this subject, but
it may be stated as a general proposition that Sunday rest
laws have been sustained in all of the states of the Union
where the same have been considered, with the exception of
those hereafter mentioned in this opinion.

It is contended by counsel for the defendant that the act
under consideration violates article 3, section 19 of the con-
stitution of this state, and is class legislation, and discrimin-
ates against certain business and is unreasonable. An ex-
amination of the authorities, however, supports the conten-
tion that the legislature is the sole judge of the exemptions
that may be made from the operation of such a statute; that
the question of determining what classes of business shall be
exempt from a Sunday closing law, is a matter of policy and
entirely within the power of the legislature, and that the
judicial department will not call in question the motive of
the legislative department in enacting a statute, unless such
statute infringes upon some provision of the constitution.
The law under consideration in this case applies alike to all
of the same class. Section 2 says that "it shall be unlawful
for any person or persons in this state to keep open on Sun-
day for the purpose of any business, trade or sale of goods,
wares or merchandise, any shop, store, building or place of
business whatever." This is a general prohibition against all
who belong to the class enumerated in the statute. The sec-
tion, however, further provides that restaurants may furnish
lodging and meals, and that it shall not apply to livery-stables

or to stores, in so far as the sale of medicine or sick-room supplies are concerned, or to undertakers while providing for the dead, or to news stands so far as the sale of daily papers and magazines is concerned, nor to the sale of nonintoxicating refreshments, candies and cigars. In other words, this section of the statute classifies different business, and says that lodging and meals may be furnished on Sunday; that a livery-stable may operate; that stores may open for the sale of medicine and sick-room supplies; that an undertaker may open his place of business while providing for the dead; that news stands may engage in the quiet sale and delivery of daily papers and magazines; that nonintoxicating refreshments and candies and cigars may be sold. This act permits any store, any place of business to open and engage in the class of business not prohibited by the act. It does not say that a grocery store which handles cigars may not open, but it does say that it shall open only for the purpose of selling cigars. The defendant in this case could have opened his place of business and have engaged in the sale of cigars and candy. Any person is permitted to open his place of business on Sunday for trade in any of the articles not prohibited from sale, unless the business itself is prohibited. The fact that a person does not carry for trade any of the articles allowed to be sold on Sunday is not an argument against the constitutionality of the act. The act does not prohibit him from putting in stock for sale such articles. He is permitted to engage in trade on Sunday upon the same terms every other person is permitted; that is, in carrying for trade such articles as the law permits to be sold on such day.

Counsel for defendant rather ingeniously argue that if section 2 of this act is sustained, special privileges will be granted and special burdens and restrictions imposed, as section 2 applies only to keeping open a store, shop, building or fixed place of business for the purpose of selling the articles thereby prohibited, while the same articles may be sold upon the highway by peddlers, venders and farmers, at any place other than a store. Counsel overlook, however, that the storekeeper or anyone may peddle or sell upon the

streets just the same as the vender or farmer. The fact that a man owns a store does not prohibit him from doing any act permitted to be done by another. Neither does it permit the vender or farmer to open a store and sell any of the articles prohibited from sale on Sunday. In other words, the statute grants the same privilege to every person under like circumstances and conditions. The merchant may enjoy the same privileges as the vender and farmer under like circumstances. The vender and farmer may enjoy the same privileges as the merchant under like circumstances. So it will readily be seen that this act does not discriminate or impose special burdens or restrictions, but is fair and extends the same privileges to every person under like circumstances. What reason the legislature had for making the particular classification they did is a matter upon which no two minds might agree. To one person, it might seem unreasonable to permit cigars to be sold on Sunday and to prohibit the sale of tea, coffee and other articles, yet the legislature has deemed it wise to make this classification. Inasmuch as the classification extends the same privileges to everybody, and there is no discrimination, and no burden imposed on any person of a class which is not imposed upon all of the same class, this court cannot revise the judgment of the legislature as to the wisdom of such classification. The legislature no doubt had in view the health, comfort, happiness and morals of the people of this state, and in the interest of which they enacted the law now under consideration. They may have reasoned that the employee is entitled to protection, and entitled to have one day in seven, at least, which he may call his own, and upon which his employer has no right or authority to demand his services, and the employer, the merchant, is entitled to protection, for the reason that if he knows that his competitor is required to close his place of business on Sunday, he will readily yield to that condition. If, however, there is no prohibition upon his competitor, in order that he may keep his trade, and not permit his competitor to pass him in the race for business and wealth, he will open his store on Sunday. The same reason and rule will apply to

all classes of business, and when the legislature has determined that it is wise to place a restriction upon certain business, and prohibit the doing of such business on Sunday, it is entirely within their power, unless it shall appear that the operation of the statute is unfair, unreasonable and in violation of some constitutional provision.

What has been said with reference to section 2 of this act applies alike to the other sections, except with more force. It is argued that section 1 of the act declares the first day of the week, commonly called Sunday, to be a day of public rest, but contains no penalty for a violation thereof. This section is a mere declaration of the purpose and object of the act, and the prohibitions which follow in subsequent sections all tend to make Sunday a day of rest. While it is true the statute does not say you cannot labor on Sunday, yet it does say that certain classes of business shall not be carried on on Sunday. If a business is not permitted on Sunday, the chances are that the owner of the business will rest, and when the number of places of business enumerated in this statute are closed, the evident result of such legislative action will be a cessation of labor and a tendency to rest. If section 1 contained a penalty, no other provision would be necessary. In other words, if the first day of the week was declared a day of public rest, and a penalty was fixed for violating the same, it would not be necessary to specify any particular business or make any exemptions. The legislature has seen fit to declare Sunday a day of public rest, and in carrying out the object and purpose of that statute, enumerates what business may not be done on Sunday, and what may. This is the common form found in Sunday legislation.

We will now briefly review the cases cited and relied upon by the defendant.

*Ex parte Newman,* 9 Cal. 502, has been expressly overruled by *Ex parte Andrews,* 18 Cal. 678.

*French v. Teschemaker,* 24 Cal. 518, can hardly be considered an authority in this case. The court in that case had under consideration an act which authorized the board of

supervisors of the city and county of San Francisco to sub-
scribe to the capital stock of a railway company, and the
question arose as to the liability of the stockholders under
said act, and the only question passed upon in that case which
might be applicable here was, that all laws of a general
nature shall have uniform operation—that is, operate equally
upon all persons upon whom it acts at all.   In the case at
bar, it must be admitted that the act operates equally upon
all persons upon whom it acts at all.

In the case of *Ex parte Westerfield*, 55 Cal. 560, the court
had under consideration a Sunday rest law which made it
unlawful for any person engaged in the business of baking
to engage or permit others in his employ to engage in the
labor of baking, for sale, between 6 o'clock P. M., on Satur-
day, and 6 o'clock P. M., on Sunday, except in preparatory
work.   The court held that the act was unconstitutional be-
cause it provided for punishing the employer and not the
employee, and that if labor was to be restrained on some one
day, it must be under a general law restraining all labor on
such day.

In the case of *Ex parte Jentzch*, 112 Cal. 468, 44 Pac. 803,
32 L. R. A. 664, the court had under consideration an act
prohibiting barbers from carrying on business after 12 o'clock
on Sunday or on a legal holiday, and held such law to be un-
constitutional as undue restraint of personal liberty and spe-
cial legislation based on an arbitrary classification, and not
a proper exercise of police power.

The case of *City of Pasadena v. Stimpson*, 91 Cal. 238, 27
Pac. 604, was an action of condemnation, and in passing upon
the application of the general municipal incorporation act,
the court says: ''The conclusion is, that although a law is
general and constitutional when it applies equally to all per-
sons embraced in a class founded upon some natural or in-
trinsic or constitutional distinction, it is not general or con-
stitutional if it confers particular privileges or imposes pecu-
liar disabilities or burdensome conditions, in the exercise of
a common right, upon a class of persons arbitrarily selected

from the general body of those who stand in precisely the same relation to the subject of the law.''

We think we have clearly shown that this statement of the law, while correct, does not apply to the act under consideration in this case; that the act involved does not impose any privileges or burdens which are not imposed upon all belonging to the same class, and does apply alike to all similarly situated.

In the case of *Rauer v. Williams,* 118 Cal. 401, 50 Pac. 691, which was an action to compel a justice's court of San Francisco to accept fees tendered to him by a party about to commence an action in the justice's court, the defendant in the action based his conduct upon the validity of a municipal act to provide for and regulate the manner of receiving and paying fees, etc., and the court held that an act is special, although it applied to all citizens within a class, unless reason appears why it is not made to apply generally to all. It will readily be seen that this decision has no application to the case at bar. In that case the legislature had to do with the government of cities and counties, while the act involved in this case is one under the police power of the state.

Several decisions are cited from the supreme court of Illinois, the first of which is *Town of Lakeview v. Letz,* 44 Ill. 82, wherein the court held that the laws of a state should be uniform and of a general operation, and an unnecessary distinct discrimination between persons, classes or locations will invalidate such law. Later the supreme court of Illinois in the case of *Eden v. People,* 161 Ill. 296, 52 Am. St. Rep. 365, 43 N. E. 1108, 32 L. R. A. 659, held that an act prohibiting barbering on Sunday was class legislation.

In the case of *City of Denver v. Bach,* 26 Colo. 530, 58 Pac. 1089, 46 L. R. A. 848, the supreme court of Colorado held unconstitutional an ordinance prohibiting the sale of clothing on Sunday, upon the ground that it did not affect all alike, and that a business or occupation which was not liable to interfere with public morality or tend to create disorder and over which the city had no control, could not be made the subject of prohibition on Sunday. In this case the court

held such ordinance unconstitutional because it was local and special legislation, and was such a case where a general law might be made applicable.

In the case of *State v. Grannaman*, 132 Mo. 326, 33 S. W. 783, the supreme court of Missouri held unconstitutional a law which made it a misdemeanor to carry on the business of barbering on Sunday, because it was local and special legislation, where a general law could be made applicable.

In the case of *Ragio v. State*, 86 Tenn. 272, 6 S. W. 401, the court had under consideration an act which made it a crime for anyone engaged in the business of barbering to shave, shampoo, cut hair or keep open their bathrooms on Sunday. The court held such act granting to individuals rights, privileges and immunities was special legislation, and that the subject could have been covered by a general law.

Other authorities are cited which go only to the effect that a law for the regulation of a business shall operate alike upon all of the same class. While some of these authorities sustain the position of the defendant, the weight of authority and the better reason seem to clearly be with the state.

We are, therefore, clearly of the opinion that the title of the act of March 12, 1907, is sufficient, and that the provisions of said act are not in violation of the constitution of this state or of the United States. The judgment is affirmed.

Ailshie, C. J., and Sullivan, J., concur.