[Crim. No. 97.    In Bank.—April 17, 1896.]

Ex Parte LEO JENTZSCH, on Habeas Corpus.

CONSTITUTIONAL LAW—PERSONAL LIBERTY—SPECIAL LEGISLATION—POLICE POWER—CLOSING BARBER-SHOPS ON HOLIDAYS.—Section 310½ of the Penal Code, enacted in 1895, making it a misdemeanor to keep open and conduct a barber-shop, or to work as a barber, on Sundays and other holidays, is an undue restraint of personal liberty, and is special legislation, based upon an arbitrary classification, and not a proper exercise of the police power, and is unconstitutional and void.

WRIT OF HABEAS CORPUS from the Supreme Court to the sheriff of the City and County of San Francisco, holding the petitioner under commitment from the Police Court of said city and county, upon a judgment

of conviction, for keeping open a barber-shop on Sunday afternoon, June 16, 1895.

The facts are stated in the opinion of the court.

*Darwin C. Allen,* and *Henry E. Highton, Amicus Curiæ,* for Petitioner.

Among the retained rights, under the constitution, are the right of freedom from servitude, imprisonment, and restraint without reason, the right to use one's faculties in all innocent and lawful ways, to live and work where he will, to enjoy the society of his family, to support his household, to nourish and educate his offspring, and to earn his livelihood in any lawful calling; and the courts should declare void any legislative enactment which, under the alleged exercise of police power, impairs or denies these and kindred rights, that bear no relation whatever to a just exercise of that power. (Const., art. I, sec. 33; Cooley's Constitutional Limitations, 6th ed, 481–86; Burlamaqui, c. 3, sec. 15; Federalist, No. 84; Kent's Commentaries, pt. 12; *Ex parte Parrott,* 6 Saw. 374, 375.) Legislation is special which applies to a selected or designated class, even though it embraces the whole of the class, unless there appears some reason why its operation should, or may, be restricted to the selected class; and legislation which seeks arbitrarily to impose a disability upon a particular class which might, for the same reason, be made applicable to the whole community, should be declared void. (Const., art. IV, sec. 25, subd. 2, 33; *Ex parte Westerfield,* 55 Cal. 550; 36 Am. Rep. 47; *Ex parte Koser,* 60 Cal. 190; *People* v. *Central Pac. R. R. Co.,* 83 Cal. 410; *Pasadena* v. *Stimson,* 91 Cal. 248; *Bruch* v. *Columbet,* 104 Cal. 347; *Earle* v. *Board of Education,* 55 Cal. 489; *Miller* v. *Kister,* 68 Cal. 142; *Dougherty* v. *Austin,* 94 Cal. 601.)

*H. G. W. Dinkelspiel,* for Respondent.

The act in question does not in any wise abridge any of the constitutional immunities. All property of the

same class, all persons of the same class, and all acts coming within the purview of this act are equally dealt with. There is no distinction with regard to the rights of property or persons under it; it does not contravene article I, section 21 of the Constitution. (*Kumler* v. *Board of Supervisors*, 103 Cal. 395; *People* v. *Superior Court*, 100 Cal. 120; *McDonald* v. *Conniff*, 99 Cal. 386; *In re Madera Irr. Dist.*, 92 Cal. 316; 27 Am. St. Rep. 106; *Wheeler* v. *Philadelphia*, 77 Pa. St. 348; *Iowa etc. Co.* v. *Soper*, 39 Iowa, 112; *Matter of New York etc. R. R. Co.*, 70 N. Y. 350; *In re Church*, 92 N. Y. 1; *Ferguson* v. *Ross*, 126 N. Y. 459; *Ex parte Andrews*, 18 Cal 680, et seq.; *Brooks* v. *Hyde*, 37 Cal. 377; *Ex parte Smith*, 38 Cal. 710, and cases cited; *University of California* v. *Bernard*, 57 Cal. 613, and cases cited; *Ex parte Burke*, 59 Cal. 13; 43 Am. Rep. 231; *Longan* v. *County of Solano*, 65 Cal. 122; *Ex parte Lichtenstein*, 67 Cal. 360, et seq; 56 Am. Rep. 713; *In re Linehan*, 72 Cal. 11, and cases cited; *Thomason* v. *Ashworth*, 73 Cal. 73; *Abeel* v. *Clark*, 84 Cal. 229, et seq.; *Ex parte Halsted*, 89 Cal. 472; *Cody* v. *Murphey*, 89 Cal. 524; *Ex parte Clancy*, 90 Cal. 558; *Pasadena* v. *Stimson*, 91 Cal. 249–51; *Darcy* v. *Mayor etc. of San Jose*, 104 Cal. 644, 645; *Chicago etc. R. R. Co.* v. *Iowa*, 94 U. S. 155; *Hymes* v. *Aydelott*, 26 Ind. 431; *Kilgore* v. *Magee*, 85 Pa. St. 401; *Knickerbocker* v. *People*, 102 Ill. 218.)

HENSHAW, J.—Petitioner was convicted under section 310½ of the Penal Code, which is a new section, enacted in 1895, and which provides as follows: "Every person who as proprietor, manager, lessee, employee or agent keeps open or conducts, or causes to be kept open or conducted, any barber-shop, bath-house and barber-shop, barber-shop of a bathing establishment or hair-dressing establishment, or any place for shaving or hair-dressing used and conducted in connection with any other place of business or resort, or who engages at work or labor as a barber in any such shop or establishment on Sun-

day, or on a legal holiday, after the hour of 12 o'clock
M. of said day, is guilty of a misdemeanor."

It is contended that the section is in violation of the
following constitutional provisions:

"All men are by nature free and independent, and
have certain inalienable rights, among which are those
of enjoying and defending life and liberty, acquiring,
possessing and protecting property, and pursuing and
obtaining safety and happiness."   (Const., art. I, sec. 1.)

"No special privileges or immunities shall ever be
granted which may not be altered, revoked, or repealed
by the legislature; nor shall any citizen, or class of citi-
zens, be granted privileges or immunities which, upon
the same terms, shall not be granted to all citizens."
(Const., art., I, sec. 21.)

"The legislature shall not pass local or special laws in
any of the following enumerated cases, that is to say:
. . . 2. For the punishment of crimes and misde-
meanors. . . . . In all cases where a general law can
be made applicable."   (Const., art. IV, sec. 25, subds.
2, 33.)

In construing so-called Sunday laws, courts have
variously regarded them, some from a religious view,
others from a secular, and still others from an anoma-
lous commingling of both. In this state they have
never been upheld from a religious standpoint.   Under
a constitution which guarantees to all equal liberty of
religion and conscience, any law which forbids an act
not in itself *contra bonos mores*, because that act is re-
pugnant to the beliefs of one religious sect, of necessity
interferes with the liberty of those who hold to other
beliefs or to none at all.

Liberty of conscience and belief is preserved alike to
the followers of Christ, to Buddhist and Mohammedan,
to all who think that their tenets alone are illumined
by the light of divine truth; but it is equally preserved
to the skeptic, agnostic, atheist, and infidel, who says in
his heart, " There is no God."

So it has come to be the established rule in this state

to view and construe such laws as civil and secular enactments. (*Ex parte Andrews*, 18 Cal. 678; *Ex parte Koser*, 60 Cal. 177.)

Thus construed, these laws, when decreed valid, are upheld as a proper exercise of the police power, as an exercise of the legislative prerogative to regulate the relations, contracts, intercourse, and business of society at large, and its particular members with respect to each other. Herein it is held that the legislature may pass laws for the preservation of health and the promotion of good morals—propositions which are indisputable.

Says Mr. Justice Field in *Ex parte Newman*, 9 Cal. 518: " Labor is a necessity imposed by the condition of our race, and to protect labor is the highest office of our laws." It is this language which respondent quotes and relies upon in support of the validity of this penal statute.

Upon the question thus presented of the proper limits of the police power, much might be written, and much indeed will have to be written, ere just bounds are set to its exercise. But in this case neither time permits nor necessity demands the consideration. Still, it may be suggested in passing that our government was not designed to be paternal in form. We are a self-governing people, and our just pride is that our laws are made by us as well as for us. Every individual citizen is to be allowed so much liberty as may exist without impairment of the equal rights of his fellows. Our institutions are founded upon the conviction that we are not only capable of self-government as a community, but what is the logical necessity, that we are capable, to a great extent, of individual self-government. If this conviction shall prove ill-founded, we have built our house upon sand. The spirit of a system such as ours is, therefore, at total variance with that which, more or less veiled, still shows in the paternalism of other nations. It may be injurious to health to eat bread before it is twenty-four hours old, yet it would strike us with surprise to see the legislature making a crime of the

sale of fresh bread.  We look with disfavor upon such legislation as we do upon the enactment of sumptuary laws.  We do not even punish a man for his vices, unless they be practiced openly, so as to lead to the spread of corruption, or to breaches of the peace, or to public scandal.  In brief, we give to the individual the utmost possible amount of personal liberty, and, with that guaranteed him, he is treated as a person of responsible judgment, not as a child in his nonage, and is left free to work out his destiny as impulse, education, training, heredity, and environment direct him.

So, while the police power is one whose proper use makes most potently for good, in its undefined scope and inordinate exercise lurks no small danger to the republic.  For the difficulty which is experienced in defining its just limits and bounds, affords a temptation to the legislature to encroach upon the rights of citizens with experimental laws, none the less dangerous because well meant.

We think the act under consideration gives plain evidence of such encroachment.  It is sought to be upheld by the argument that it is a police regulation; that it seeks to protect labor against the oppression of capital.  The people have passed the law; let not the courts interfere with it.  If the people are dissatisfied, they may amend or repeal it.

It is not easy to see where or how this law protects labor from the unjust exactions of capital.  A man's constitutional liberty means more than his personal freedom.  It means, with many other rights, his right freely to labor, and to own the fruits of his toil.  It is a curious law for the protection of labor which punishes the laborer for working.  Yet that is precisely what this law does.  The laboring barber, engaged in a most respectable, useful, and cleanly pursuit, is singled out from the thousands of his fellows, in other employments, and told that, willy nilly, he shall not work upon holidays and Sundays after twelve o'clock, noon.  His wishes, tastes, or necessities are not consulted.  If he labors, he

is a criminal. Such protection to labor carried a little further would send him from the jail to the poorhouse.

How comes it that the legislative eye was so keen to discern the needs of the oppressed barber, and yet was blind to his toiling brethren in other vocations? Steam-car and street-car operatives labor through long and weary Sunday hours, so do mill and factory hands. There is no Sunday period of rest and no protection for the overworked employees of our daily papers. Do these not need rest and protection? The bare suggestion of these considerations shows the injustice and inequality of this law.

In brief, whether or not a general law to promote rest from labor in all business vocations may be upheld as within the due exercise of the police power as imposing for its welfare a needed period of repose upon the whole community, a law such as this certainly cannot. A law is not always general because it operates upon all within a class. There must be back of that a substantial reason why it is made to operate only upon a class, and not generally upon all. As was said in *Pasadena* v. *Stimson* 91 Cal. 238: "The conclusion is that, although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." And in *Darcy* v. *Mayor etc. of San Jose*, 104 Cal. 642: "The classification, however, must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity of legislation." In the case of our cities the constitution itself decrees a classification by population, and the differing exigencies of municipal government require that laws operating upon any class should be

held general. Otherwise the constitutional scheme itself is overthrown. But in a law such as this, no reason has been or can be shown why the followers of one useful and unobjectionable employment should be debarred from the right to labor upon certain days, and others in like classes of employment be not so debarred. If it be constitutional to single out one such class and deny its members the right to labor on one day in the week, it would be constitutional to prohibit them from following their vocation upon six days of the week. When any one such class is singled out and put under the criminal ban of a law such as this, the law not only is special, unjust, and unreasonable in its operation, but it works an invasion of individual liberty, the liberty of free labor which it pretends to protect.

*Ex parte Westerfield*, 55 Cal. 550, 36 Am. Rep. 47, in no wise conflicts with these views. There was an additional vice in that law. While the classification was in itself arbitrary, as in this case, the law did not include all who came within the arbitrary classification thus made. It was this ground only which was discussed, and upon which the law was overthrown.

Here, however, the designated class is based upon no distinction, and, as is said by Judge Cooley: "Every one has a right to demand that he be governed by general rules, and a special statute that singles his case out as one to be regulated by a different law from that which is applied in all similar cases would not be legitimate legislation, but an arbitrary mandate unrecognized by the law."

The prisoner is discharged.

TEMPLE, J., McFARLAND, J., GAROUTTE, J., HARRISON, J., and BEATTY, C. J., concurred.

VAN FLEET, J., concurred in the judgment.