[S. F. No. 14809. In Bank.—January 21, 1935.]

M. J. GANLEY, Respondent, v. R. E. CLAEYS et al., Appellants.

A. F. Bray, City Attorney, J. E. Rodgers and W. L. Wollitz for Appellants.

Ivan N. Maroevich for Respondent.

THOMPSON, J.—This is an appeal from a judgment declaring void and of no effect an ordinance of the city of Martinez (No. 2 C. S.) entitled "An Ordinance of the City of Martinez regulating the hours and times for the carrying on and conducting of the business of barbering in the City of Martinez." The ordinance in question provided that all barber shops should be closed from 6:30 P. M. of each day until 8 o'clock of the following morning except on Saturdays and days preceding holidays specified in the ordinance, on which days they should close at 8 o'clock P. M. and remain closed all day on Sundays and the specified holidays. The trial court held the ordinance was not a valid exercise of the police power of the city and hence was a violation of sections 1 and 21 of article I and subdivisions 2 and 33 of section 25 of article IV of the state Constitution and section 1 of amendment XIV of the Constitution of the United States, in that it constituted an unnecessary and undue restraint of and interference with personal liberty, a deprivation of property without due process of law, being an unwarranted interference with the carrying on of a lawful business, and, further, that it was special legislation based upon an arbitrary classification.

In the case of *Ex parte Jentzsch*, 112 Cal. 468 [44 Pac. 803, 32 L. R. A. 664], this court considered a section of the Penal Code making it a misdemeanor for barber shops to remain open Sundays or on a legal holiday after the hour of 12 o'clock M., and concluded that it constituted an undue restraint of personal liberty and was for that reason unconstitutional and void.

It is asserted by appellants, however, that the present case is different from the one there considered, because since that time the state by the "California Barber

Law'' (Deering's Gen. Laws, 1931, p. 325) has acted to regulate the business of barbering and has defined therein unsanitary practices and provided for the appointment by the board of barbers of such inspectors as ''are necessary to carry out the provisions of the act''. It may be added that it is also provided that no one may practice barbering unless and until he shall have secured a certificate of registration which may be suspended or revoked for a violation of any of the rules of sanitation. It is said and a witness testified that the inspectors are only on duty from 9 A. M. until 5 P. M. and that ninety per cent of the complaints from the public concern violations occurring late in the evening or on Sundays and holidays—hence the ordinance is a health measure. However, a reading of the barber law will convince the most skeptical that the state has provided a complete plan or method for the regulation of the business and to prevent anyone from engaging therein who does not conform to the standards therein announced. Inspections are very rarely made, but there is nothing to prevent the board from proceeding with the hearing provided for in section 16 of the act whenever complaints are of such a character as to justify their action. In this regard the business is not different from the profession of dentistry or medicine or law. It was the apparent purpose of the legislature, subject to certain standards, to vest regulation of the barbers in themselves, by the appointment of a board of barbers charged with the responsibility of enforcing the act. These latter statements are made because of their bearing upon the question of whether the ordinance here has a reasonable relation to the health of the public. In *State* v. *City of Laramie,* 40 Wyo. 74 [275 Pac. 106], the court quotes from *Lawton* v. *State,* 152 U. S. 133–137 [14 Sup. Ct. 499, 38 L. Ed. 385], as follows: ''To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.'' The Laramie case to which

we have just referred dealt with an ordinance substantially the same as the one here involved. The Supreme Court of Wyoming, while specifically recognizing the right of the state to regulate barber shops by proper measures for the protection of the public health, determined that the closing measure did not bear ''a real and substantial relation to the purpose of protecting the public from the spread of disease'' and hence it stood ''on the same footing as any similar restriction on the right of a citizen to engage in a harmless and useful occupation''.

It is well that we should note at this juncture that the Laramie case, *supra*, was decided subsequently to that of *Falco* v. *Atlantic City*, 99 N. J. L. 19, 21 [122 Atl. 610], in which latter case a similar ordinance was sustained, and it was pointed out that in the New Jersey case, the ordinance was passed pursuant to a legislative enactment authorizing municipalities to regulate the opening and closing of barber shops in aid of their regulation thereof, whereas in the Laramie case the legislature had only granted to municipalities the power to regulate the business. In the present case there is no specific legislative grant of any character, but rather the state, as already indicated, has acted to completely regulate the barbering business.

Appellants stress two cases (*In re Lowenthal*, 92 Cal. App. 200 [267 Pac. 886], and *In re Gatsois*, 95 Cal. App. 762 [273 Pac. 826]), involving and upholding ordinances requiring the closing of butcher shops between certain hours, and argue that they are controlling here. We cannot agree with this contention for two reasons. In the first place, the statute while committing to the director of agriculture the general supervision of slaughter houses and establishments used in preparing animals for food purposes, expressly conferred upon cities the right to provide for local supervision and local inspections. In the second place, regulation in the butchering business, as undertaken by the state, deals directly with the product which is subject to rigid inspection in order to secure a wholesome supply of meat, whereas in the barbering business the regulation is accomplished by limiting the practitioners to those who understand and will comply with sanitary methods adopted and approved by the state. It is apparent that if the latter course is successfully pursued the barbering business is completely and thoroughly

regulated. It is equally obvious that if the respondent in this case is not one who understands and who will not conform to the sanitary methods adopted, compelling him to close his shop an hour earlier is not going to accomplish that purpose. In view of these facts we are of the opinion that the rule adopted in the Laramie case is the proper one, and that the ordinance has not a reasonable relation to the purpose assigned for its adoption.

Judgment affirmed.

Shenk, J., Waste, C. J., Langdon, J., and Seawell, J., concurred.