In my whole judicial experience, covering thirty-five years' service on the Appellate and Supreme Courts of this state, I have seldom encountered a legal contention that presented as little judicial merit as the one advanced by the city of Zanesville in the present case. One reading the majority opinion may well wonder what the real crux of this controversy between the city and the barber is. In the syllabus no mention is made of Section 34, Article II of the Ohio Constitution, and the opinion gives it but scant attention.
(1) The pertinent portion of that constitutional provision reads: "Laws may be passed fixing and regulating the hours of labor * * *; and no other provision of the constitution shall impair or limit this power."
On June 6, 1934, this court, in Village of Brewster v. Hill,128 Ohio St. 354, 191 N.E. 366, held that the term "law" used in various sections of our Constitution and embraced in the phrase "laws may be passed", applies *Page 299 
to statute law only and not to local, municipal laws or ordinances. That case received the concurrence of every member of this court, namely, Jones, J., Weygandt, C.J., Stephenson, Matthias, Bevis, Zimmerman and Wilkin, JJ. In the course of the opinion we called attention to the fact that the phrase"laws may be passed" permeated the amendments to the Constitution adopted in 1912, and that the term did not comprehend municipal ordinances; and the opinion made special reference to the fact that the same phrase, "laws may bepassed", is found in Article II, Section 34, which is now being considered by this court.
The foregoing section was adopted at the same time that Article XVIII, Section 3, was adopted. Two distinct subjects were presented in separate constitutional sections; one, the regulation of "the hours of labor" (Article II, Section 34), was confided to state legislative authority by the phrase"laws may be passed"; the other, the adoption and enforcement of "police, sanitary and other similar regulations" (Article XVIII, Section 3), was confided to the municipality. The provisions of Article II, Section 34, ex proprio vigore, definitely and separately seized the subjects — the fixing and regulating the hours of labor and the establishment of minimum wages — and made them amenable of state-wide legislative control where they should be, since, by the method of statutory control, such state scheme would have the merit of having uniform operation over all barber shops in the entire state under Article II, Section 26, and would not make licensed barbers criminals for an act done in one portion of the state which was lawful elsewhere.
The Municipal Court held the ordinance constitutionally invalid; the Court of Common Pleas, in affirming the Municipal Court, likewise held the ordinance invalid. When the case was submitted to the Court of Appeals, that court, apparently not being apprised of our decision in the case of Village ofBrewster v. Hill, *Page 300 supra, rested its decision chiefly on Article II, Section 34, as a ground for reversal of the two lower courts. The appellate court held in effect that the phrase, "laws may be passed", included municipal ordinances. From statements made in oral argument before this court last October, it appeared that counsel for the city were not advised of our decision in theBrewster case, supra.
One of the chief duties of a court of dernier resort is to be consistent in its rulings, so that the bench and bar may ascertain the legal principles controlling decided cases. It is not an infrequent occurrence where lawyers cite the same case in support of their divergent views. The dissenting members of this court adhere to the legal principle announced in Villageof Brewster v. Hill, supra, which distinctly held that the phrase, "laws may be passed", applies to state law only and not to municipal ordinances, as in the instant case; and where any Ohio court so construes the phrase, "laws may be passed", so as to read, "laws (and ordinances) may be passed, fixing and regulating the hours of labor", such a construction is equivalent to an amendment of Section 34, Article II, by judicial fiat.
(2) While we think the foregoing conclusion is absolutely dispositive of this case, there is another and compelling reason why the judgment of the two lower courts should be affirmed and the appellate court reversed. We have always held that police and sanitary regulations are subject to control by state and municipal authorities and, where a state has not acted, a home-rule city may enforce reasonable regulations which are not in conflict with state law. These principles have been announced so often by this court that it seems unnecessary to cite cases in their support. But that feature does not reach the fundamental legal point in issue in this case. The trade of barbering is, like many others, a lawful business. The question to be determined is whether a city council can impose upon the shop's owner or upon his employees, in invitum, *Page 301 
certain, particular hours of a day which they must employ, and those only, in the conduct of such business. Were the question of inspection or sanitation of the shop in issue in this court, the right of regulation would not be questioned; but the police power does not enter the picture in this case. Section 10 of the ordinance fixing the hours of labor in Zanesville barber shops does not purport to be an inspection or sanitary measure. It is purely an hour-fixing ordinance. Many of our fields of activity are subject to the exercise of the police power. In this state, filling stations, restaurants, hotels, factories and manufacturing establishments are subject to the exercise of police power; but it does not follow that those establishments are subject to municipal regulation in respect to the particular hours when labor is to be employed. Neither the N. R. A. in the heyday of its activities nor the American Federation of Labor has asked for such drastic regulation of American labor and industry. While they may have sought a five or six-hour day or a thirty-hour week, they sought no legislation prescribing when those particular hours or days should be employed.
This subject is not a new one in this country. Since the year 1923 the courts of final jurisdiction of seven different states have passed upon this exact question, and each has denied the constitutional power of municipalities to fix the hours of labor in barber shops. The case of Falco, Pros., v. AtlanticCity, 99 N.J.L. 19, quoted in the majority opinion, was decided by an inferior court composed of but two judges. It held that the ordinance regulating the hours of opening and closing barber shops was a legitimate exercise of the police power. The court seems to have based its decision upon the fact that a reason for the legislation was that barber shops required sanitary supervision and required the fixing of a definite time for inspection. If such be the reasons, they are non-existent in *Page 302 
Ohio, because in 1933 the state adopted a comprehensive barbers' code comprising twenty-seven sections of our state law (115 Ohio Laws, 312), one of the sections providing that the State Board of Examiners should prescribe sanitary requirements for barber shops subject to the approval of the State Department of Health, with authority given state agents to enter and inspect any barber shop during business hours.
As heretofore stated, the courts of last resort in seven states have passed upon the exact question we have under consideration and each has held that an ordinance regulation prescribing the hours to be employed in a barber shop is unconstitutional, unreasonable and void. Those states are Georgia, Wyoming, Louisiana, Mississippi, California, Washington and Minnesota.
In the Georgia case, Chaires v. City of Atlanta,164 Ga. 755, 139 S.E. 559, 55 A. L. R., 230, decided in 1927, an ordinance was adopted providing that all barber shops in the city should be closed during week days at 7:00 p. m., except Saturdays, when they were to close at 9:00 p. m. The Supreme Court of Georgia held that this ordinance was void.
In State, ex rel. Newman, v. City of Laramie, 40 Wy., 74,275 P. 106, decided in 1929, the city had adopted an ordinance regulating barber shops by providing that no barber shop should be open for business earlier than 8:00 a. m. or later than 6:00 p. m., excepting. Saturdays, etc. The Supreme Court of Wyoming held that the ordinance was not a reasonable exercise of the power of regulation and that the ordinance was void.
In the case of City of Alexandria v. Hall, 171 La. 595,131 So. 722, decided in 1930, the city had passed an ordinance requiring barber shops to be closed at 6:30 p. m., except Saturdays, and on days preceding legal holidays. The Supreme Court of Louisiana held that the ordinance was not a reasonable exercise of the city's power of regulating barber shops and that it was unconstitutional and void. *Page 303 
In the case of Knight, Chief of Police, v. Johns, 161 Miss. 519,137 So. 509, decided in 1931, a city in Mississippi had adopted an ordinance forbidding barber shops to open before 7:30 a. m. or to remain open after 6:30 p. m. The Supreme Court of Mississippi held that the city ordinance was unreasonable and invalid.
In the case of Ganley v. Claeys, 2 Cal.2d 266,40 P.2d 817, decided by the Supreme Court of California this year, it appears that a city in California had adopted an ordinance regulating barber shops by providing that they should be closed "from 6:30 p. m. until 8 o'clock of the following morning except on Saturdays and days preceding specified holidays". The Supreme Court of California held that the ordinance had no reasonable relation to public health and was void, being in contravention of the Fourteenth Amendment to the Federal Constitution and of the Constitution of California.
In the case of Patton v. City of Bellingham, 179 Wn. 566,38 P.2d 364, 98 A. L. R., 1076, decided about a year ago, a city in the state of Washington had passed a municipal ordinance making it unlawful to open barber shops earlier than 8:00 a. m. or to close later than 6:00 p. m. on week days, other than Saturdays, etc. The Supreme Court of Washington held that, while the city had authority to provide for inspection of barber shops to ascertain their sanitary condition, the regulation by ordinance of the hours when barber shops should open and close was not a valid exercise of the police power.
The latest case we find dealing upon this exact subject, decided March 15, 1935, is State, ex rel. Pavlik, v. Johannes, reported by the Supreme Court of Minnesota in 259 N.W. 537. The Supreme Court of Minnesota reviewed previous cases dealing with the subject of regulating barber shop hours and held that a city ordinance limiting hours when barber shops should be *Page 304 
open for business was violative of the due process clauses of the State and Federal Constitutions. In that case, the city of Minneapolis had adopted an ordinance providing that no barber shop should be kept open for business before 8:00 a. m. or after 6:30 p. m. of any day except Saturday and days preceding legal holidays. The syllabus in the Minnesota case reads as follows: "An ordinance of the city of Minneapolis which assumes to prescribe the hours when barber shops may be open for business is unconstitutional and void in so far as it prescribes such hours, in that it violates the due process clauses of the state and Federal Constitutions." Six of the seven judges appear to have concurred in that decision.
I do not often quote from cases at such length and do so now merely to show the general unanimity of decisions among the states of the Union upon this grave and important legal question. Despite the fact that, since 1923, the courts of last resort of all those states have held these ordinances void, the majority opinion quotes the views of a dissenting judge in support of such an ordinance; but I rest my decision upon the well-considered conclusions reached by the courts of those seven states, which I consider to be a restatement of the law in our American jurisprudence.
This ordinance may be such that would receive the approval of a Soviet or Fascist regime; but its Alpha and Omega amounts to a regimentation of both labor and industry. Why are the closing hours at six o'clock p. m. or on Thursday afternoons so sacrosanct? The public welfare is the welfare of the people. They best know when they desire such service and the trade can be depended upon to render that service at the hours the public demands it. Thousands of neighborhood shops exist in Ohio communities having many more thousands of customers employed in daytime work in offices, shops and factories, customers who have little or no opportunity of seeking a barber's service before *Page 305 
six p. m.; nor have they such opportunity before eight a. m., when they must be at work or on their way thereto. Shall that portion of the public be deprived of their liberty of action by the ipse dixit of some municipal council? I concur in the conclusions reached by the courts named in this dissent and hold that the ordinance in question is arbitrary, unreasonable and places an undue restraint upon the personal liberties of the public and upon those engaged in the pursuit of a lawful business.